IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN GUYTON,** | : | **Civil No. 3:11-CV-1390** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Caputo)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MR. LAPPIN, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

I.  **Statement of Facts and of the Case**

The plaintiff, a prisoner at the United States Penitentiary, Canaan, commenced this action by filing a *pro se* complaint on July 26, 2011. (Doc. 1)  In his complaint Guyton named twelve correctional staff, along with the warden at the penitentiary, the regional director of the Bureau of Prisons, and the Director of the Bureau of Prisons as defendants.  Guyton alleges that these prison officials have collectively violated his constitutional rights by failing to appropriately respond to Guyton's requests for a prison transfer, a transfer that Guyton alleges is necessary for security reasons because he is a federal witness in an ongoing murder case. (Id.)

Guyton's complaint sought damages from these prison officials, and also demanded wide-ranging injunctive relief in the form of court orders which would, *inter alia*: (1)  direct that Guyton be housed in a half-way house Hawaii, with the Bureau of Prisons providing him with a new wardrobe, and bus passes; (2) compel

prison officials to give Guyton a single cell pending his removal to the prison of his choice in Hawaii; and (3) instructing the United States Department of Justice to meet with Guyton and assist him in filing a criminal complaint against people who he alleges attempted to coerce his testimony in some other proceedings. Along with his complaint, Guyton filed a motion for leave to proceed in forma pauperis, (Doc. 2) which we granted. (Doc. 7) We also directed service of this complaint on the defendants, since at least some of the allegations and claims made by Guyton may warrant further response and consideration by the courts.

Guyton has now filed a battery of motions seeking various forms of preliminary injunctive relief at the outset of this litigation. (Docs. 11, 13, 15, and 17) These motions seek relief which in some instances closely parallels that sought in the complaint. For example, the motions include a motion demanding that the Court instruct the Department of Justice to meet with Guyton so that he may file unspecified criminal charges against unnamed third parties. (Doc. 11) In addition, Guyton seeks a preliminary injunction directing prison officials to arrange for Guyton's transfer to a half-way house in Hawaii where he is to be provided a wardrobe and bus passes. (Doc. 13) Further, Guyton insists that the Court should order him to receive single cell accommodations pending his anticipated move to Hawaii. (Doc. 15) Finally, Guyton requests that the Court issue an order instructing prison officials to establish

a special schedule for the plaintiff at the prison law library. (Doc. 17)  Thus, in these motions, filed before the Plaintiff's complaint has even been responded to by the defendants, Guyton in many instances seeks the precise relief which is the ultimate goal of this lawsuit.

For the reasons set forth below, it is recommended that these motions be denied, without prejudice.

## II. Discussion

### A. Guyton is Not Entitled to a Preliminary Injunction at This Time.

This Court has a statutory obligation to conduct a preliminary review of *pro se* pleadings from prisoners which seek redress against government officials. Specifically, we are obliged to review these pleadings pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .

We also have an obligation to carefully screen inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions. Such requests for immediate injunctive relief are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir.2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982)(affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold

matter, "it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." Emile, 2006 WL 2773261, at *6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir. 1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).
>
> Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Rul 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry his burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is

not granted." <u>Hohe v. Casey</u>, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting <u>Morton v. Beyer</u>, 822 F.2d 364 (3d Cir. 1987)).  Similarly, to the extent that Guyton seeks permanent injunctive relief, he must make a specific and precise legal showing.  "A court may issue a permanent injunction [only] where the moving party has demonstrated that: (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief. <u>Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.</u>, 747 F.2d 844 (3d Cir.1984)." <u>Chao v. Rothermel</u>, 327 F.3d 223, 228 (3d Cir. 2003).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute.  Specifically, 18 U.S.C. §3626, limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where Guyton: (1) seeks to enjoin a wide-array of non-parties; (2) requests injunctive relief of a presumably permanent nature without first fully exhausting administrative remedies; and (3) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of Guyton's prayer for injunctive relief presents separate problems and concerns.

For example, injunctions against non-parties, like some of the injunctions sought here by Guyton–which would presumably require us to direct non-party prison officials in Hawaii regarding their responsibilities to provide proper attire to Guyton– require a specific legal showing. To the extent that Guyton seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an

injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996). Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Indeed, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995).

Moreover, where a plaintiff seeks injunctive relief of a presumably permanent nature, as Guyton does in this case, the plaintiff's failure to timely exhaust his administrative remedies may have substantive significance since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including complaints like those made here

grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context. Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000).

In addition, to the extent that Guyton seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4.

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile,

2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir.2001)).

Judged against these exacting standards, in their current form, Guyton's various motions for injunctive relief plainly fail. At the outset, we note that in the past, inmates have frequently sought preliminary injunctive relief similar to that demanded by Guyton here, compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such requests, while often made, are rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for injunctive relief as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. Thus, courts have rejected inmate requests for injunctions mandating specific housing conditions for prisoners. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction). Similarly, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to

either demonstrate irreparable harm; <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services, Inc.</u>, 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. <u>Quinn v. Palakovich</u>, 204 F. App'x 116 (3d Cir. 2006). Furthermore, inmates have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to allow them greater access to legal materials. Yet, these requests, while frequently made, have rarely been embraced by the courts. <u>See, e.g.</u>, <u>Kershner v. Mazurkiewicz, supra</u>; <u>Edmonds v. Sobina</u>, 296 F. App'x 214, 216 n.3 (3d Cir. 2008); <u>Barnes v. Quattlebaum</u>, No. 08-2197, 2009 WL 678165 (D.S.C. March 12, 2009); <u>Clay v. Sobina</u>, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); <u>Wesley v. Vaughn</u>, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001). In all of these instances, courts have consistently declined inmate invitations to become embroiled in prison management issues.

In this case, our review of the Plaintiff's motions for injunctive relief leads us to conclude that Guyton has not made the demanding showing required for this extraordinary form of relief. Indeed, in our view, the current, broadly-framed, requests for injunctive relief fail for a host of reasons.

First, Guyton has not made the threshold showing required for injunctive relief from non-parties, which is what he seeks here, in part. Thus, he has not shown that

these non-parties are " acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Second, Guyton's motion does not address the demanding standards prescribed by caselaw and statute for such injunctions, in that he does not present a prayer for relief which is "narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2).  Indeed, Guyton's various prayers for relief are cast broadly and would invite the Court to intervene in prison housing, discipline, grievance and library access issues, as well as directing the exercise of prosecutorial discretion by the United States Attorney, something we are forbidden from doing.

Third, Guyton's motion does not explain, whether, and to what extent, administrative relief has been sought, and exhausted, with respect to these matters. In this setting, the failure of Guyton to address these matters has substantive significance to the extent that he seeks a permanent injunction of some sort from the Court.

Fourth, we find that Guyton has not yet met his threshold obligation of showing reasonable probability of success on the merits. Indeed, Guyton faces a

demanding–and presently unmet–burden of proof on the merits of these various claims.

For example, to the extent that Guyton appears to request an order directing that he be transferred to some other prison in Hawaii, (Doc. 13), it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). Thus, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v.

Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5thCir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846 (1976). Simply put, as a legal matter Guyton has no constitutional right to choose his prison. Therefore, he may not use a motion for preliminary injunction as a vehicle to choose his place of confinement, or direct a prison transfer, at the outset of this litigation. Given these existing legal impediments to Guyton's prison transfer claims, we cannot find that Guyton has shown a likelihood of success on the merits of these claims.

Similarly, Guyton's demands for an injunction specifying that he receive specific single cell housing accommodations, (Doc. 15), fail since "[i]t is well-settled that prisoners do not have a due process right to be single-celled. See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)." Hodges v. Wilson, 341 F.App'x 846, 849 (3d Cir. 2009). Likewise, with respect to the likelihood of Guyton's success in demanding an injunction prescribing his law library access, (Doc. 17), we note that inmates have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to allow them greater access to legal materials. Yet, these requests, while frequently made, have rarely been embraced by the courts. See, e.g., Kershner v. Mazurkiewicz, supra; Edmonds v. Sobina, 296 F. App'x 214, 216 n.3 (3d Cir. 2008); Barnes v. Quattlebaum, No. 08-2197, 2009 WL

678165 (D.S.C. March 12, 2009); Clay v. Sobina, No. 06-861, 2007 WL 950384 (W.D.Pa. March 26, 2007); Wesley v. Vaughn, No. 99-1228, 2001 WL 1391254 (E.D.Pa. Nov. 7, 2001).

Furthermore, Guyton has virtually no likelihood of success on his demand that the Court order the United States Attorney to file criminal charges on his behalf against unnamed third parties.  Decision regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat.  Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607 (1985).

Entirely aside from the fact that Guyton has not shown a likelihood of success on the merits, the first prerequisite for injunctive relief, we find–as many other courts have found when presented with similar complaints–that this inmate has not shown at this time shown an immediate irreparable harm justifying a preliminary injunction. See e.g., Rivera v. Pennsylvania Dep't. of Corrections, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008)(same).  In this regard, when considering this benchmark standard for a preliminary injunction, whether the movant will be irreparably injured by denial of the relief, it is clear that: "Irreparable injury is

established by showing that Plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." Messner, 2009 WL 1406986, at *4.  Moreover, in this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for ...." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).  Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate since the inmate has not shown that he faces immediate, *irreparable* harm. Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008).  Here, Guyton seeks damages from those officials. Guyton's assertion that he can be compensated by damages from these officials is inconsistent with his claim that the same officials have engaged in conduct resulting in an irreparable injury which requires immediate, extraordinary injunctive relief.

Moreover, applying these legal standards in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . .

-17-

Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5. In this case, as we view it, the injunctive relief sought in these various preliminary injunction motions is identical to the broadly framed claims for relief now made by Guyton in his complaint. Since the ultimate issues in this separate lawsuit are inextricably intertwined with the assertions in this motion for injunctive relief, a ruling on this motion might be perceived as speaking in some way to the ultimate issues in this separately filed case brought by Guyton. In such instances we should refrain from prematurely granting such relief.

Finally, we note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the Court began dictating the transfer or treatment for the plaintiff, one inmate out of thousands treated in the federal prison system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary

relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), weighs heavily against Guyton in this case.

Because Guyton has not carried his burden of proving either a reasonable probability of ultimate success on the merits, or immediate and irreparable harm, and because granting these injunctions could adversely affect the defendants' and the public's interests, these requests for preliminary injunctions (Docs. 11, 13, 15, and 17), should be denied without prejudice to later efforts by Guyton to file properly documented requests for injunctive relief.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the motions for preliminary injunctions (Docs. 11, 13, 15, and 17), IT IS RECOMMENDED that the motions be DENIED without prejudice to later efforts by Guyton to file properly documented requests for injunctive relief.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of August 2011.

>***S/MARTIN C. CARLSON***
>Martin C. Carlson
>United States Magistrate Judge